**JANELLI v. JANELLI.**

No. 14017.

Court of Civil Appeals of Texas. Dallas.

April 8, 1949.

Rehearing Denied April 29, 1949.

George Sergeant and Sarah Daniels, both of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

CRAMER, Justice.

Since the original judgment in this case was rendered by this Court a motion for rehearing was overruled, and the Supreme Court has dismissed an application for writ of error for want of jurisdiction. Appellee now insists on her timely filed motion to certify four questions, two of them seeking answers to the question of this Court's appellate jurisdiction of this appeal; the other two with reference to the sufficiency of the testimony as to marriage. Since the motion for rehearing was overruled, the personnel of this Court has changed, Associate Justice Looney having retired and the writer having succeeded him. This Court, as now constituted, has jurisdiction and it is its duty to pass upon such motion and to grant or refuse to certify; or, if it deems proper, to set aside the former judgment and enter a new judgment. Wilson Independent School District v. Weaver et al., 143 Tex. 530, 187 S.W.2d 221.

The record in this case has been discussed in three opinions heretofore written; 216 S.W.2d 587. Plaintiff below alleged a ceremonial marriage, grounds for divorce, division of community property, and praying for temporary relief pending final hearing. Temporary relief was granted. The evidence raised the issue of a ceremonial marriage and the trial court, by granting the temporary relief, impliedly resolved the fact questions with reference to a marriage in favor of appellee. In other words, the trial court exercised his discretion in granting the injunction and ordering appellant to file an inventory and appraisement.

Under the law, when the trial court exercises his discretion, the only question before the appellate court is whether he abused that discretion. The testimony, in substance, of appellee, other than that contained in the other opinions, 216 S.W.2d 587, is as follows: At the time she first met appellant, she and he were both single; after that, she married C. W. Alcorn. After her divorce, appellant began going with her again. Later she married Wichmann, whom she divorced in 1938. Appellant after that divorce, again started going with her; they went to church and sometimes to a show. They were married in his home November 6, 1939. In addition to the testimony recited in the opinions of Chief Justice Bond and Justice Looney, which will not be repeated, she further testified that at the time of the marriage appellant lived with his aged mother and he did not want her to know of the marriage; that she objected to his marrying any one who had been married before, "she was very religious, and that was her belief;" and he did not want to take anybody there and upset her. That both he and she told others they were married. Appellant's mother died in August 1943. This testimony makes a question of fact, and, if true, establishes a ceremonial marriage. There is no issue of putative, nor common law, marriage in this case. The evidence establishes, without contradiction, that the parties were both capable of contracting a valid marriage. This eliminates a putative marriage. The evidence is not sufficient to raise an issue of common law marriage. The only issue is the veracity of the parties. One testified that a marriage ceremony was performed; the other denied that fact. Appellant lays great stress on the fact that no license was of record in Dallas County. Such fact is not conclusive, but only circumstance to be taken with other testimony on the defense of no marriage. As said by Chief Justice Fly in Clover v. Clover, Tex.Civ.App., 247 S.W. 300, 303: "The failure to find any record of the marriage in Starr county had no probative force in showing there was no marriage. The license might have been issued in any other county in Texas. It was not necessary that the license to marry be issued in the county in which the marriage took place."

Even a "sham" or fake marriage has been upheld, where the woman acted in good faith. In Hartman v. Valier & Spies Milling Co., 356 Mo. 424, 202 S.W.2d 1, 6, the court said: "As we view the case, appellant must stand here solely on the theory that no marriage ceremony at all was performed in Belleville, Illinois; and that the testimony of the respondent and her witness Mrs. McClure to the contrary was false and perjured. The only other theory consistent with appellant's view that would credit these witnesses with veracity, would be that the marriage was a sham ceremony conducted by some pretended clergyman and arranged by the since deceased Hartman. But even that would not invalidate the marriage in this state, under Sec. 3364 [Mo.R.S.A.], supra, if respondent was deceived thereby. In view of the strict Illinois statutes, we agree it is hard to understand how Hartman got the marriage license, if any; and why there is not some record of it in the county clerk's office, if one is kept. But the evidence is somewhat hazy both ways."

In Little et al. v. Burgess et al., 244 Ala. 447, 13 So.2d 761, the court said: "The evidence is without dispute that at the inception of the relation between Irene Blanton and Andrew Jackson Burgess, now deceased, no obstacles existed affecting their right to intermarry. There is evidence going to show that they became engaged to marry after Irene moved away from Russellville to Florence, and her testimony tends to show a ceremonial marriage consummated in the State of Indiana. Whether or not that ceremony was bogus and fraudulent on the part of Burgess to induce her to submit to sexual relations is wholly immaterial, if she acted in good faith. Farley v. Farley, 94 Ala. 501, 10 So. 646, 33 Am.St.Rep. 141."

Since holding out is not necessary to establish a ceremonial marriage, the ceremony, if performed and if appellee was in good faith, was binding on appellant.

■ It is true in this case that appellee's testimony was controverted,—seriously— and the questions of fact were close; still it was for the trial court and not this Court to resolve the conflicts in the testimony. He saw and heard the witnesses; was in better position to judge which was most credible and the weight to be given thereto.

The temporary orders did not include one for alimony. If that had been done the trial court could have protected the appellant by an order similar to the one affirmed by this Court in Dyer v. Dyer, 87 S.W.2d 489.

■ Weighing the equities as between the parties, the trial court could have, and did, impliedly, find from the evidence that the injunction against disposition, and the return of an inventory, of property in appellant's hands, would not cause him great disadvantage or loss; but, on the other hand, its disposition by appellant during pendency of the case could, and would, if appellant lost the case, result in great injury to appellee. The writer, therefore, cannot say the trial court abused his discretion.

The case being one for divorce, the orders were entered under the authority of Articles 4635, 4636, Title 75, "Husband and Wife," chapter 4, "Divorce," reading as follows:

Art. 4635. "Inventory and appraisement. At any time during a suit for divorce the wife may, for the preservation of her rights, require an inventory and an appraisement to be made of both real and personal estate which are in the possession of the husband, and an injunction restraining him from disposing of any part thereof in any manner."

Art. 4636. "Temporary orders. Pending suit for a divorce the court, or the judge thereof, may make such temporary orders respecting the property and parties as shall be deemed necessary and equitable."

■ Appellee asserts that there is no appeal from orders entered under these articles of the statute. We must sustain this contention. Only injunctions granted under arts. 4642–4669, inclusive, Title 76, Vernon's Ann.Civ.St. arts. 4642–4669, "Injunctions," are appealable under art. 4662, Title 76, which provides for an appeal from injunctions granted "under any provision of this title". Rule 385 of Rules of Civil Procedure repeals art. 4662 in

258

part, but not that part relating to appeals. The first line of the Rule reads, "Appeals from interlocutory orders (when allowed by law) may be taken by * * *", etc. Since there is no appeal allowed by law from orders under art. 4635, Title 75, it follows that this Court has no jurisdiction, and that this appeal should be dismissed for want of jurisdiction. Beckler v. Beckler, Tex.Civ.App., 114 S.W.2d 618.

The former judgment should therefore be set aside, the appeal dismissed, and since the above conclusions make it unnecessary to certify the questions to the Supreme Court, such motion overruled.

YOUNG, J., concurs.

BOND, C. J., dissents.

BOND, Chief Justice (dissenting).

The opinion edited by our Justice Cramer recognizes this Court's jurisdiction of this appeal in sustaining the action of the trial court on the basis of implied findings that there was a marriage; hence the mandatory injunction of the trial court was proper and should not be disturbed on this appeal; and then finally concludes that "This Court has no jurisdiction and this appeal should be dismissed for want of jurisdiction," citing Beckler v. Beckler, Tex.Civ.App., 114 S.W.2d 618. Such finding and conclusion is also the holding of Mr. Justice Young in dissent to the majority opinion of this Court on appellee's first motion for rehearing; 216 S.W.2d 587.

It is very evident that the opinions of both my worthy associates reflect inconsistent duplicitous actions,—one, retaining jurisdiction to this Court in determining the issues involved; and two, refusing to entertain jurisdiction by dismissing the appeal. Manifestly, if this Court has no jurisdiction, then the opinions of the majority, as this Court is now composed, entertaining jurisdiction, are clearly arbiter dicta.

I adhere to the opinion of the majority of this Court, as it was composed on the original submission, that we had jurisdiction, based on the conclusion that the evidence disclosed that there was no marriage between the parties; hence the suit was not a divorce action; fortified by the related facts and the procedure before the trial court.

As stated in the original opinion, plaintiff's suit is, only in form, a divorce action, seeking, among other things, an injunction restraining defendant from the exercise of ownership, and requiring him to file an inventory of community property. It is difficult for me to conceive how the defendant can file inventory of community property when he contends that there was no marriage. Only in the status of marriage can there be community property. The defendant is unable to file inventory of community property without admitting a marriage. Hence, in effect, denying marriage denies any community, completely complying with the court's order.

Plaintiff alleged in her petition, paragraph "second" " * * * that she and the defendant were lawfully married to each other on the 6th day of November, 1939, in Dallas, Dallas County, Texas"; then in paragraph "Seventh" she alleged: "Plaintiff further shows to the court that she is afraid of the defendant and she alleges that the defendant will do her irreparable bodily harm and injury and she lives in fear of her own life and she verily believes that the defendant will inflict upon her serious bodily injuries unless this court issues its most gracious restraining order directing defendant to refrain from going about the plaintiff, telephoning her or communicating with her in any manner whatsoever, directly or indirectly, and restrain the defendant from molesting plaintiff in any manner whatsoever. Plaintiff further alleges that she will be deprived of her interest in the community property, both real and personal, of the plaintiff and defendant, unless this defendant is restrained and enjoined from selling or disposing of their estate during the pendency of this suit, or encumbering said real estate during the pendency of this suit."

It will be seen that plaintiff's petition is supported by attached affidavit, as follows: "The State of Texas County of Dallas Before me, the undersigned authority on this day personally appeared Mrs. Lu Ella Janelli, plaintiff in the above cause,

who, being first duly sworn, states on oath, that she has read paragraph "Seventh" and that all facts therein stated are true and correct. /s/ Mrs. Lu Ella Janelli. Seal Subscribed and sworn to before me this the 8th day of July A.D. 1948. /s/ Mindred Taylor, Notary Public, Dallas County, Texas."

It will thus be seen that plaintiff's petition is not supported by affidavit as to any paragraph therein, other than paragraph "Seventh"; thus leaving the issue of marriage unsupported, and which is categorically challenged by the defendant's answer. Then, it will be seen that on trial, the plaintiff objected to the court hearing evidence on the issue of marriage (Tr. p. 2); whereupon, the trial court announced: "I am not going to decide this morning the question of whether or not these people are married"; and in the court's judgment it will be seen that he makes no final conclusion of, or even mentioned, the marital status of the parties. Hence it cannot be said that the trial court determined the controversial issue of marriage raised in pleadings, or that the trial court "implied marriage." If, indeed, the record discloses "implied marriage," as found in Justice Cramer's opinion, such implication is not sufficient for issuance of an injunction. Marriage must be shown to actually exist, to support mandatory injunction. Hence, no marriage, there can be no divorce action, and there can be no community property. In my opinion, the suit at bar involves rights in and to property; and the issue on this appeal is the result of the hearing in the trial court on a separate issue, to wit, marriage, as the basis for the injunction affecting appellant's property. Rule 174, T.R.C.P., provides: "(b) Separate Trials. The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counter claim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counter claims, third-party claims, or issues." Thus it was incumbent on the trial court to first determine the issue of marriage, it being the only issue involved on the hearing before granting the prejudicial mandatory injunction as affecting appellant's property. The injunc-

tion, in depriving the defendant of the full ownership and disposition of his property, in absence of a determination of the issue involved, was as a matter of law an abuse of discretion vested in a trial court, and so often guarded by appellate courts; hence appeal lies to this Court on the broad principles of equity in the preservation of appellant's property rights.

Our Mr. Justice Cramer being in accord with the opinion of Mr. Justice Young, dismissing the appeal, their opinions become the opinion of this Court, and my opinion, that of dissent. And in connection with my dissenting opinion I adopt the conclusion reached in our former opinion, with that of Justice Looney in accord therewith. Janelli v. Janelli, Tex.Civ.App., 216 S.W.2d 587.